IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHANE KOJIMA,<br><br>      Plaintiff,<br><br>v.<br><br>LEHI CITY, LEHI CITY PROSECUTOR'S OFFICE, LEHI CITY POLICE DEPARTMENT,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>(ECF No. 44)<br><br>Case No.  2:13-cv-000755-EJF<br><br>**Magistrate Judge Evelyn J. Furse** |

## I.  INTRODUCTION

Defendants Lehi City (the "City"), the Lehi City Prosecutor's Office, and the Lehi City Police Department ("PD") move the Court[1] for summary judgment, (ECF No. 44), on Plaintiff Shane Kojima's Complaint, (ECF No. 2), which alleges several 42 U.S.C. § 1983, state law, and state constitutional violations based on harassment and misconduct by the Lehi City Prosecutor's Office and the Lehi City PD in connection with disputes arising between himself and his estranged wife.  The Court reviewed the parties' submissions and does not need oral argument on this Motion.  DUCiv R 7-1(f).

The City asserts several defenses against Mr. Kojima's claims.  First, the City argues Mr. Kojima cannot sue the Lehi City Prosecutor's Office and the Lehi City PD separately from the City.  Second, the City argues Mr. Kojima's § 1983 claims founder because Mr. Kojima fails to put forth sufficient evidence to permit a reasonable jury to find municipal liability.  Third, the

---

[1] On September 16, 2013, in accordance with United States District Court for the District of Utah General Order 07-001 and Federal Rule of Civil Procedure 73, the parties consented to have this case decided by the undersigned Magistrate Judge.  (ECF No. 15.)

1

City argues the Governmental Immunity Act of Utah ("GIA") bars Mr. Kojima's state law claims. Finally, the City argues that even if the GIA allows Mr. Kojima's state law claims, Mr. Kojima fails to put forth sufficient evidence to allow a reasonable jury to find in his favor.

The Court GRANTS summary judgment for the City. Mr. Kojima concedes he cannot prove his defamation, fraudulent nondisclosure, and trespass claims. He further concedes the GIA bars his state abuse of process and malicious prosecution claims and that he cannot prevail on his § 1983 malicious prosecution claim. Furthermore, the Court finds Mr. Kojima cannot sue the Lehi City Prosecutor's Office and the Lehi City PD separately from the City. Mr. Kojima also fails to put forth enough evidence to allow a reasonable jury to find municipal liability under § 1983. Additionally, the GIA bars part of Mr. Kojima's state law negligence claim. Finally, the Court finds Mr. Kojima fails to put forth evidence sufficient to reach a jury on his remaining claims—his state constitutional claims, his state law negligent supervision claim, and the rest of his state law negligence claim.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes summary judgment where "no genuine dispute as to any material fact" remains in the case. Fed. R. Civ. P. 56(a).

> [T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Summary judgment allows the Court and the parties to isolate and dispose of factually unsupported claims or defenses.

A party asserting a fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  A failure to do so may result in the Court not considering the unsupported assertion.  *See* Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1258 (10th Cir. 2006) (citation and internal quotation marks omitted).  The Court, therefore, focuses on whether, based on the evidence presented and the reasonable inferences drawn, "reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  With this background, the Court recounts the relevant facts in the light most favorable to Mr. Kojima, the non-moving party.

### III. FACTUAL BACKGROUND

In early 2012, Mr. Kojima and his estranged wife, Melanie Kojima, started contemplating divorce.  (Reply lii–liii, ECF No. 62.)  Over the next few months, either Mr. or Mrs. Kojima involved the Lehi City PD on a number of occasions to respond to their confrontations or to keep the peace when they met.  (*Id.* at vi, xiii, xviii.)  A few times, the incidents ended with Mr. Kojima leaving the family home at the direction of the Lehi City PD.  (*Id.* at xi, xxix–xxxi.)

On March 2, 2012, Mr. Kojima reported to the Lehi City PD that Mrs. Kojima's brother threatened to kill him.  (Opp'n 5, ECF No. 53.)  Mrs. Kojima's brother texted Mrs. Kojima that "he was waiting down the street to shoot [Mr. Kojima] if [Mr. and Mrs. Kojima got] in a fight or anything" and "that [Mrs. Kojima] needed to keep herself and the kids low inside" because "he

would shoot high." (*Id.* at 5–6 (first and third alterations in original) (internal quotation marks omitted), 91.) One officer spoke to Mrs. Kojima's brother, who told the officer he would go home. (Reply vi–vii, ECF No. 62.) The Lehi City Prosecutor's Office declined to file charges against Mrs. Kojima's brother. (Opp'n 7, ECF No. 53.) Mr. Kojima asserts both that the officer never forwarded the case to the county attorney's office, (*id.* at 75–76), and that the officer referred the case to the county attorney's office for attempted aggravated assault or threats against life/terroristic threat, but the office declined to file charges, (*id.* at 7). However, this discrepancy has no material impact, as either scenario would result in the same decision on the Motion.

On March 15, 2012, Mrs. Kojima reported to the Lehi City PD that Mr. Kojima took her phone from her and left the vicinity of the family home with it when she threatened to call the police. (Reply xviii–xix, ECF No. 62.) While Mrs. Kojima was at the police station, Mr. Kojima asked two officers to escort him to the family home. (Opp'n 14–15, ECF No. 53; Reply lxii, ECF No. 62.) Mr. Kojima did not take the phone, and the police actually observed Mr. Kojima finding Mrs. Kojima's phone on the kitchen counter of the family home despite Mrs. Kojima's allegations that Mr. Kojima had taken the phone from her. (Reply lxii–lxiv, ECF No. 62; Shane Kojima Dep. 120:23-121:4, ECF No. 53-2.) Nonetheless, the prosecutor charged Mr. Kojima with damage to or interruption of a communication device. (Reply xix–xx, ECF No. 62.) The prosecutor obtained Mrs. Kojima's cell phone records in preparation for the case. (Opp'n 18, ECF No. 53.) After looking at the records, the prosecutor dismissed the case. (Reply xlvi–xlvii, ECF No. 62.)

On March 18, 2012, Mrs. Kojima requested the Lehi City PD accompany her while she picked up the children from the family home. (Opp'n 21, ECF No. 53.) During the encounter,

Mr. and Mrs. Kojima argued about custody of their children before agreeing their oldest son would stay with Mr. Kojima at that time. (*Id.* at 21–22; Reply lxiv, ECF No. 62.) While Mrs. Kojima bid her son goodbye, Mr. Kojima recorded their conversation. (Reply lxiv, ECF No. 62.) Afterwards, Mrs. Kojima slapped the recorder out of Mr. Kojima's hand. (*Id.* at lxiv–lxv.) When Mr. Kojima told the officers who witnessed the exchange he wanted to press charges, they refused but said they would send his report to the Lehi City Prosecutor's Office. (Shane Kojima Dep. 129:16–131:23, ECF No. 53-2.) The City never brought charges against Mrs. Kojima. (*Id.*)

On April 15, 2012, Mrs. Kojima called the Lehi City PD, claiming Mr. Kojima tried to hit her with his car in a Kentucky Fried Chicken ("KFC") parking lot. (Reply xiii, ECF No. 62.) Mrs. Kojima claims she saw Mr. Kojima yelling her name in a black car "flying into the parking lot driveway really fast towards [her]." (*Id.* at xiv (citations and internal quotation marks omitted).) Mrs. Kojima claims she ran into the restaurant and sat with three people. (*Id.* at xv.) When she saw Mr. Kojima enter, Mrs. Kojima claims she went in the bathroom until her mother arrived. (*Id.* at xv.)

During its investigation of the incident, the Lehi City PD interviewed people at KFC but failed to obtain surveillance footage of the KFC parking lot. (*Id.* at vii, xv, xxiii–xxv, xliv–xlv.) The officer either failed to obtain relevant footage and/or lied about what the footage showed. (Opp'n 73, 84, ECF No. 53.) The officers did not refer the case to the Lehi City Prosecutor's office until a few weeks later, after Mrs. Kojima came back into the station to inquire about the case's status. (David Colqui Dep. 48:15–53:11, ECF No. 53-23.) The officers did not have any new evidence in the case. (*Id.*) The City originally charged Mr. Kojima with a class C

misdemeanor of disorderly conduct but amended it to an infraction.  (Opp'n 39, ECF No. 53.)  A judge acquitted Mr. Kojima after a bench trial.  (Reply xxxii, ECF No. 62.)

## IV. DISCUSSION

Mr. Kojima concedes the Court can dismiss his defamation, fraudulent nondisclosure, and trespass claims with prejudice, (Opp'n 1–2, ECF No. 53), acknowledges the GIA provides immunity to the City from his state law abuse of process and malicious prosecution claims, (*id.* at 85–86), and admits he cannot make out a § 1983 malicious prosecution claim, (*id.* at 89).  Therefore, the Court grants summary judgment for the City on these claims.  The Court turns to Mr. Kojima's remaining claims of § 1983 abuse of process, retaliation, and procedural due process and state law negligence and negligent supervision.[2]

### A.  Lehi City Prosecutor's Office and Lehi City PD

The City argues Mr. Kojima cannot sue the Lehi City Prosecutor's Office and the Lehi City PD because they constitute subdivisions of Lehi City and thus are not amenable to suit.  (Mot. Summ. J. 1, ECF No. 44.)  The Court agrees.

Typically, governmental subdivisions do not qualify as separate entities amenable to suit.  *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (noting dismissal of City of Denver Police Department because it was not an entity separate from the City and thus not suable); *Fail v. W. Valley City*, No. 2:04-cv-1094, 2006 WL 842910, at *2 (D. Utah Mar. 28, 2006) (noting West Valley City Police Department is a subunit of West Valley City and thus not subject to suit).  Mr. Kojima correctly notes that a court uses state law to determine whether a person can sue a city's subdivision under § 1983.  *Lucero v. Weber Cnty.*, No. 1:14-CV-68 TS, 2014 WL

---

[2] Mr. Kojima's Complaint fails to delineate clearly which of his claims constitute § 1983 claims and which constitute state law claims.  However, the Court understands Mr. Kojima's claims to fall into each category as stated in Mr. Kojima's Opposition to the Motion for Summary Judgment ("Opposition").  (*See* Opp'n 40–41, 50, 60, 85–87, 92–93, 96–97, ECF No. 53.)

5460455, at *2 (D. Utah Oct. 27, 2014). No Utah statute allows Mr. Kojima to sue the Lehi City Prosecutor's Office and the Lehi City PD separately from the City. *See id.* (finding no support for proposition that Utah law permits people to sue police departments separately from the municipalities to which they belong). The state legislature has set forth which governmental entities people can sue: for example, Utah Code section 10-1-202 allows people to sue municipalities; section 17-50-302(2)(a)(i) allows people to sue counties; section 17B-1-103(1)(b) allows people to sue local districts; and section 54-1-1 allows people to sue the Public Service Commission. Had the Utah legislature wanted to allow people to sue police departments and prosecutor's officers separately from the municipalities to which they belong, it would have done so. *Cf.*, *e.g.*, *Sebelius v. Cloer*, 569 U.S. __, 133 S. Ct. 1886, 1894 (2013) ("We have long held that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (alteration in original) (citation omitted).)

      The GIA further demonstrates the limitation on suits to those against the municipality and not against subdivisions through its provisions on notice. Before a party can sue a Utah governmental entity, it must give notice to a specific person in that entity pursuant to the GIA. Utah Code Ann. § 63G-7-401(2), (3)(b)(ii).[3] Neither the Lehi City Prosecutor's Office nor the Lehi City PD fits into any of the seven categories provided in the subsection outlining who gets the notice of claim. *See* Utah Code Ann. § 63G-7-401(3)(b)(ii). By contrast, the subsection does explain that a person must give notice to "the city or town clerk, when the claim is against an incorporated *city or town*." Utah Code Ann. § 63G-7-401(3)(b)(ii)(A) (emphasis added). "[T]he

---

[3] The Court cites to the 2014 version of the GIA because the parties cite to that version. The state legislature has amended the GIA several times since the events in the instant case, but the substance of the GIA on the points at issue have remained the same for purposes of this Motion.

7

legislature has left little open to interpretation and has resolved any potential ambiguities as to whom the Notice must be delivered." *Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 14, 37 P.3d 1156.  Thus, the notice provisions provide further evidence that a party who has grievances against a city's subdivisions can only sue the city itself.

Mr. Kojima attempts to use the GIA as support for allowing him to sue the Lehi City Prosecutor's Office and the Lehi City PD by noting it waives immunity from suit for some of his claims.  (Opp'n 85–86, ECF No. 53.)  While Mr. Kojima correctly notes the GIA defines immunity from suit, he fails to reference any section granting the power to sue a governmental entity.  (*See id.*; Utah Code Ann. § 63G-7-201(1) (defining immunity from suit).)  The GIA's "scope extends only to the grant and waiver of governmental immunity; [it] does not itself serve as the basis for liability or any cause of action."  *Hall v. Utah State Dep't of Corrs.*, 2001 UT 34, ¶ 16, 24 P.3d 958 (citation omitted).  Concurrently, the Utah Supreme Court has stated that it will "construe the language of the Immunity Act narrowly."  *Li v. Univ. of Utah*, 2006 UT 57, ¶ 16, 144 P.3d 1142.  Therefore, the lack of language granting power to sue a municipal subdivision constitutes a fatal flaw in Mr. Kojima's argument.

Because Mr. Kojima has failed to identify any Utah law permitting him to sue Lehi City's PD and Prosecutor's Officer separately from the City, and the GIA implicitly acknowledges one cannot sue those subdivisions, the Court grants summary judgment for the City on all claims against the Lehi City Prosecutor's Office and the Lehi City PD.

### B.  § 1983 Abuse of Process, Retaliation, and Procedural Due Process Claims

The City argues Mr. Kojima fails to put forth evidence supporting municipal liability for all his § 1983 claims.  (Mot. Summ. J. 1–2, ECF No. 44.)  The Court agrees.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show a city official acted pursuant to a policy or custom. *Id.* at 694.

"An unconstitutional deprivation is caused by a municipal 'policy' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003) (citation omitted). For an official's actions to cause a city to have liability, the official must "possess[] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). That an official "has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82. Thus, a police officer's or prosecutor's exercise of discretion, without more, will not cause a city to have liability. "[W]hether a particular official has 'final policymaking authority' is a question of *state law*," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citation omitted), that the Court must decide, *Milligan-Hitt v. Bd. of Trustees*, 523 F.3d 1219, 1224 (10th Cir. 2008).

A "'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall*, 345 F.3d at 1177 (citation omitted). To establish a custom, the plaintiff must put forth evidence of "a continuing, persistent and widespread practice" by the municipal employees. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). To prove the existence of such a custom, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way," *Carney v. City & Cnty. of*

*Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008), and a plaintiff's "failure to allege the existence of similar [misconduct] as to others seriously undermines [the] claim that the City maintained a custom of [illegal] practices." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (citation omitted).

In his responses to the City's first set of interrogatories, Mr. Kojima confirmed he had no evidence of "any unconstitutional policy of Lehi City" or "any pattern or practice of [the City] permitting constitutional violations." (Mot. Summ. J. Ex. 38 4–5, ECF No. 44-39.) Rather, Mr. Kojima responded, "Defendants engaged in unconstitutional acts under the color of their authority" and that "specific instances of misconduct of Defendants . . . resulted in [violations of] Plaintiff's personal constitutional rights." (*Id.*) Absence any evidence of an unconstitutional policy or custom, a reasonable jury could not find municipal liability and hold the City liable under § 1983.

In the statement of elements/material facts section of his Opposition, Mr. Kojima states he "identified and alleged that the repeated conduct of the Lehi City Police Department and the multiple instances of criminal prosecutions without probable cause qualify as an unconstitutional practice in violation of Mr. Kojima's federal constitutional rights secured under the Fourth and Fourteenth Amendments." (Opp'n 36, ECF No. 53.) Mr. Kojima attempts to support this assertion by listing evidence of alleged misconduct directed at him but not at other similarly situated individuals. (*See id.* at 36–38.) "[F]ailure to allege the existence of similar [misconduct] as to others seriously undermines [the] claim that the City maintained a custom of [illegal] practices." *Randle*, 69 F.3d at 447.

Furthermore, this assertion contradicts Mr. Kojima's earlier responses to the City's interrogatories by which he remains bound. Federal Rule of Civil Procedure 37(c)(1) provides

that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Federal Rule of Civil Procedure 26(e) requires

> [a] party who has . . . responded to an interrogatory . . . must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Mr. Kojima did not supplement his responses to the interrogatories to include the new and contradictory statement from his Opposition. In fact, Mr. Kojima alleges for the first time in his Opposition that the City has an unconstitutional practice. Mr. Kojima fails to explain why he did not make this allegation earlier. Because proof of an unconstitutional policy or custom forms an essential element of any § 1983 claim, Mr. Kojima's failure to inform the City of this new allegation is not harmless. The City legitimately relied on Mr. Kojima's response to the interrogatories in conducting discovery, preparing its case, and drafting its Motion for Summary Judgment. Therefore, under Federal Rule of Civil Procedure 37(c)(1), Mr. Kojima cannot now argue City had an unconstitutional custom to make out his § 1983 claims against the City.

      Significantly, Mr. Kojima acknowledges that he must put forth evidence beyond the treatment of himself to show an unconstitutional policy or custom. (Opp'n 35-36, ECF No. 53.) Nonetheless, Mr. Kojima completely fails to address the argument. (*Id.* at 87-90.) Without such evidence, a reasonable jury could not find municipal liability under § 1983. For these reasons, the Court grants summary judgment for the City on Mr. Kojima's § 1983 claims for abuse of process, retaliation, and violations of procedural due process.

## C. State Law Claims

### *1. Utah Constitution*

Mr. Kojima also alleges the City violated his "rights guaranteed by . . . the Constitution of Utah," but he fails to elaborate on the violation beyond a couple general references to the state constitution. (Compl. 1–2, 21, ECF No. 2.) These two vague references would fail to survive a motion to dismiss, much less a motion for summary judgment.

To survive a motion to dismiss, "a complaint must have enough allegations of fact . . . 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[M]ere 'labels and conclusions' . . . will not suffice." *Id.* (citation omitted). Then, to survive a summary judgment motion, the plaintiff must support those allegations with "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show "that a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1).

Here, Mr. Kojima fails to state a claim in his Complaint. (*See* Compl. 1–2, 21, ECF No. 2.) Following up on that failure, Mr. Kojima's Opposition omits any explanation of his state constitutional claims. (*See generally* Opp'n, ECF No. 53.) Hence, the Court cannot even assess whether sufficient evidence exists for reasonable jury to find for Mr. Kojima because he has not made clear what he alleges. Thus, the Court grants summary judgment for the City on Mr. Kojima's state constitutional claims.

*2. Negligent Supervision*

Mr. Kojima alleges the City negligently supervised its police officers and failed to prevent them from mistreating and harassing him. (Compl. 19, ECF No. 2.) To make out a negligent supervision claim, Mr. Kojima must show "(i) [the City] knew or should have known that its [officers] posed a foreseeable risk of [misconduct and harassment] to third parties[;] . . . (ii) the [officers] did inflict such harm; and (iii) [the City's] negligence in . . . supervising . . . the [officers] proximately caused the injury." *Retherford v. AT&T Commc'ns*, 844 P.2d 949, 973 (Utah 1992) (citations omitted).

Mr. Kojima merely lists the elements of a negligent supervision claim without stating which facts specifically support each element. (Compl. 19, ECF No. 2.) Mr. Kojima continues to make no argument on this claim in his Opposition. (*See generally* Opp'n 85–99, ECF No. 53.) Because Mr. Kojima fails to put forth any evidence for a reasonable jury to find any of the elements needed to establish negligent supervision, and he bears the burden to do so, the Court grants summary judgment for the City on Mr. Kojima's state law negligent supervision claim. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

*3. Negligence*

The City argues that the GIA prohibits Mr. Kojima's negligence claim because the negligence claim arises out of malicious prosecution, abuse of process, trespass, defamation, or

13

negligent or intentional misrepresentation[4]—all claims against which the City has immunity under the GIA.  (Mot. Summ. J. 4–5, ECF No. 44.)

To determine whether immunity applies to a governmental entity under the GIA, the Court uses "a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."  *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043 (citation omitted).  The parties only dispute whether an exception exists to the GIA's waiver of immunity for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment."  Utah Code Ann. § 63G-7-301(4).

The City argues § 63G-7-301(5)(b) provides that exception:  "Immunity from suit . . . is not waived under Subsection[] . . . (4) if the injury arises out of, in connection with, or results from: . . . malicious prosecution, intentional trespass, abuse of process, libel, slander, [or] deceit . . . ."  (Mot. Summ. J. 4, ECF No. 44.)  Similarly, the City argues § 63G-7-301(5)(f) provides a similar exception for negligent or intentional misrepresentation.  (*Id.*)  The City asserts Mr. Kojima's negligence claim "arises out of, in connection with, or results from" Mr. Kojima's allegations of malicious prosecution, abuse of process, trespass, defamation, or negligent or intentional misrepresentation.  (*Id.*)  The Court agrees in part.

For a negligence claim to "arise[] out of, in connection with, or result[] from" one of the torts listed in § 63G-7-301(5), that tort "must be a *proximate* cause of the plaintiff's injuries in order to sustain the reinstatement of immunity."  *Barneck v. Utah Dep't of Transp.*, 2015 UT 50

---

[4] While Mr. Kojima's Complaint alleges fraudulent nondisclosure, (Compl. 17–18, ECF No. 2), fraudulent nondisclosure constitutes the same tort as intentional misrepresentation, as evidenced by having the same elements.  *Cf. Mitchell v. Christensen*, 2001 UT 80, ¶ 9, 31 P.3d 572 (providing elements of fraudulent nondisclosure) *with Moore v. Smith*, 2007 UT App 101, ¶ 36 n.12, 158 P.3d 562 (providing elements for fraudulent misrepresentation).

¶ 38, __ P.3d __. "'[P]roximate cause' requires an inquiry into 'whether the precise causal mechanism of a plaintiff's injuries was a foreseeable result of' defendant's allegedly tortious actions." *Id.* ¶ 48 n.20 (quoting *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 28, 275 P. 3d 228).

Only part of Mr. Kojima's negligence claim "arises out of, in connection with, or results from" the torts listed in § 63G-7-301(5), namely abuse of process, malicious prosecution, defamation, and misrepresentation. Mr. Kojima alleges the City "was negligent in failing to obtain the video surveillance taken from Kentucky Fried Chicken"; in "charg[ing] Mr. Kojima with a class C misdemeanor when the appropriate charge would have been merely an infraction"; and in "issuing Informations against Mr. Kojima without probable cause, and without conducting sufficient investigation to discover exculpatory evidence." (Opp'n 91–92, ECF No. 53.) Mr. Kojima argues these allegations stem from the prosecutor bringing charges against him without probable cause due to pressure from the Lehi City PD, the prosecutor mischarging him in connection with the KFC incident, and the police officer failing to obtain surveillance footage of the KFC incident. (*Id.* at 89–90.)

The Complaint does not elucidate the injuries caused by these alleged negligent acts. (Compl. 17, ECF No. 2.) The Opposition identifies harms from these same actions in the following related contexts: for his abuse of process and malicious prosecution claims, Mr. Kojima claims charging him with a class C misdemeanor forced him to hire a lawyer, (Opp'n 39, 42, ECF No. 53); for his defamation claim, Mr. Kojima claims charging without probable cause caused him to suffer "a negative impact on his reputation," stress-induced weight loss, loss of money in the sale of his home, and hardships in navigating his divorce and maintaining custody of his children, (*id.* at 48–49); for his fraudulent nondisclosure claim, Mr. Kojima claims the officer misrepresented his efforts in obtaining footage of the KFC incident, which caused Mr.

Kojima to have to defend himself needlessly, (*id.* at 51–53).  Thus, the actions taken when the City abused the legal process, maliciously prosecuted Mr. Kojima, defamed Mr. Kojima, and hid or misrepresented critical information during its investigations and prosecutions are the same as many of those grouped under the heading negligence, with what the Court can only conclude are the same proximate harms, absent different allegations or evidence.  Because the alleged actions increased the foreseeable risk of these very harms, the alleged intentional torts constitute proximate causes of Mr. Kojima's injuries from his negligence claim.  Therefore, under § 63G-7-301, the City retains immunity for much of Mr. Kojima's negligence claim.

Mr. Kojima also alleges the Lehi City PD acted negligently when (1) "officers witnessed Mrs. Kojima strike Mr. Kojima" but "merely took a report and failed to adequately respond to Mr. Kojima's report" instead of pressing charges, and (2) "the [PD] failed to properly investigate terroristic threats made against Mr. Kojima."  (Opp'n 91, ECF No. 53.)  Although the GIA does not bar this part of Mr. Kojima's claim, Mr. Kojima has failed to put forth evidence or argument of any duty on the City's part or any harm to himself with respect to these actions.  The Court finds Mr. Kojima has not met his burden of putting forth evidence of a duty or harm sufficient to allow a reasonable jury to find negligence.

To make out a negligence claim, Mr. Kojima must show that "(1) the [City] owed [him] a duty of care, (2) the [City] breached that duty, and (3) the breach proximately caused (4) [him] to suffer legally compensable damages."  *Cope v. Utah Valley State Coll.*, 2014 UT 53, ¶ 11, 342 P.3d 243 (citation omitted).  In making a claim against a governmental entity, Mr. Kojima "cannot recover for the breach of a duty owed to the general public, but must show that a duty is owed to him or her as an individual."  *Id.* at ¶ 12 (citations and internal quotation marks omitted).

Courts call this proposition the public duty doctrine and do not allow cases for failure to protect the public from criminal activity. *See id.*

Mr. Kojima fails to allege what duty the City owes him as an individual; he does not even mention the public duty doctrine. Instead, Mr. Kojima merely states the City acted negligently when it failed to take action to his satisfaction. (Opp'n 91–92, ECF No. 53.) Duty forms an "'essential element of a negligence action.'" *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991) (citations omitted). Even assuming Mr. Kojima did identify a duty, he never puts forth any specific allegations, let alone evidence, of harm from these actions or inactions. Thus, Mr. Kojima fails to put forth sufficient evidence of his claim to permit a reasonable jury to find in his favor. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") Absent that showing, the Court grants summary for the City on Mr. Kojima's negligence claim.

## V. CONCLUSION

The Court grants summary judgment for the City on Mr. Kojima's defamation, fraudulent nondisclosure, trespass, state law abuse of process, state law malicious prosecution, and § 1983 malicious prosecution claims based on Mr. Kojima's concessions. Further, the Court grants summary judgment for the City on Mr. Kojima's remaining § 1983 claims for failure to put forth sufficient evidence from which a reasonable jury could find municipal liability. The Court also grants summary judgment for the City on Mr. Kojima's state constitutional claims, state law negligent supervision claim, and part of his state law negligence claim for failure to put forth sufficient evidence from which a reasonable jury could find the elements essential to establishing

those claims. Finally, the Court finds the GIA bars the remainder of Mr. Kojima's negligence claim. For the reasons stated above, the Court GRANTS the City's Motion for Summary Judgment on all of Mr. Kojima's claims.

SO ORDERED this __14th__ day of July, 2015.

BY THE COURT:

*[signature]*
EVELYN J. FURSE
United States Magistrate Judge